RANSOME CONCRETE CO. v. GERMAN–AMERICAN BUTTON CO.

(Circuit Court of Appeals, Second Circuit. December 9, 1912.)

No. 126.

PATENTS. (§ 328*)—INFRINGEMENT—REINFORCED CONCRETE FLOOR.

The Ransome patent, No. 694,580, for a reinforced concrete floor extending to the face of a building, claims 5 to 10, inclusive, each of which contains other features besides such extension, *held* not infringed. (Coxe, Circuit Judge, dissenting as to claims 7 and 9.)

Appeal from the District Court of the United States for the Western District of New York; John R. Hazel, Judge.

Suit in equity by the Ransome Concrete Company against the German-American Button Company. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 197 Fed. 172.

This cause comes here upon appeal from a decree of the District Court, Western District of New York, holding letters patent No. 694,580, granted

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

March 4, 1902, to E. L. Ransome, for concrete construction, to be valid and infringed. The opinion of the District Judge will be found in (D. C.) 197 Fed. 172.

The following excerpts from the specifications indicate the character of the construction covered by the patent:

"My invention relates to the construction of buildings of reinforced concrete; and it consists in the extension of a reinforced concrete floor over the external piers or walls of a building and in the formation of this extension into an exterior belt course, and when the floor rests upon external piers it further consists in integrally combining with the floor beam-like extensions above and below to carry the floor from pier to pier and at the same time to form the window heads or curtain walls terminating in window heads for the story below and the window sills or curtain walls terminating in window sills for the story above."

Referring to the drawings, which need not be here reproduced, the patentee says:

"I carry out my invention as follows: After the wall or piers have been brought to the required height, the molds for the floor are set in place, and the floor is extended over the wall or piers and molded into a belt course $A$, as in Figs. 2 and 3. When the floor $A$ has to rest upon piers, it is made with the downward extension $B$, which extends to the windows $C$, of which it forms the head, and rests upon piers $D$, which it caps, as at $B'$. Between the piers it can be reduced to any required thickness, as at $B''$, Fig. 2. This extension is reinforced with the tension bar $E$, which by preference extends the length of the building. To the floor $A$, by preference after it has hardened and the piers $G$ have been built, is also added the upper extension $F$, placed between the piers $G$. This extension is made of one integral piece with the floor by means of the coil joint $H$ or other suitable union, and it extends upward to the window $K$, of which it is the sill. It is by preference rabbeted into the piers. The advantages of this floor are: First, it thoroughly binds the building together, extending as it does entirely across the walls and piers; second, it affords an architectural feature at a trivial cost; third, by the downward extension a deep beam is formed for supporting the floor load, while it also fulfills all the functions of a window head and curtain wall; fourth, by the upward extension the depth of the beam is further increased and extended from $V$ to $Y$, Fig. 2, and thus its tensional and compressive stresses are greatly lessened.

"By the term 'belt course' I include any other distinctive feature into which the exterior thickness of the floor could be molded."

The claims in controversy are as follows:

"5. A reinforced concrete floor extending to the exterior face of a building and there forming a belt course with a downward extension forming heads or lintels to the windows below, substantially as described.

"6. A reinforced concrete floor extending to the exterior face of a building and there forming a belt course, capping the piers and windows below, substantially as described.

"7. A reinforced concrete floor extending to the exterior face of a building with an upward window sill extension, substantially as described.

"8. A reinforced concrete floor extending to the face of a building and there forming a belt course with an upward window sill extension, substantially as described.

"9. A reinforced concrete floor extending to the face of a building with downward and upward extensions, substantially as described.

"10. A reinforced concrete floor extending to the face of a building and there forming a belt course and with downward and upward extensions, substantially as described."

Charles Neave, of New York City, for appellant.

E. S. Beach and Edmund Wetmore, both of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

201 F.—34

LACOMBE, Circuit Judge (after stating the facts as above). Defendant contends that the patent does not involve patentable subject-matter and that it is invalid for lack of invention and because of anticipation. These questions need not be here discussed. Had the suit been brought on claim 2, which is broadly for "a reinforced concrete floor extending to the exterior face of a building and capping the piers thereof, substantially as described," it would be necessary to pass upon them, because defendant's reinforced concrete floor does extend to the exterior face of the building and does cap the piers thereof. Unless the words "substantially as described" operate to narrow this claim, it would be clearly infringed.

Complainant, however, has not sued upon this claim, but rests its case upon other claims, into each of which there enter one or more elements, other than the floor extending over the piers. Thus a "belt course," formed by the floor at the exterior face of the building, is an element of claims 5, 6, 8, and 10. A "downward extension," substantially as described, is an element of claims 5, 9, and 10. An "upward extension," substantially as described, is an element of claims 7, 8, 9, and 10.

The weight of the testimony indicates that the "belt course" is an architectural feature into which the extended floor is molded. The illustrations of defendant's structure, whether in process of construction or completed, do not present any such architectural feature to the untrained eye. The relative appearance of the columns and the floor edge is the same as in the structure of the prior art, known as the mill of Mr. Charles Six, illustrated on page 20 of the exhibit book. Of this latter structure the complainant's witness Prevot, himself an architect, says that the drawing "does not show exterior belt courses at the level of each floor, but only lintels between piers; the piers arising continuously and unbroken, and therefore does not show a belt course," and, further, "the belt course of the patent being something that extends continuously around the building and is not merely between the piers." So far as this element of a "belt course" is concerned, we are satisfied, although there is more conflict in the testimony, that defendant's structure should be classified with the prior art, as represented by the Six Mill, which has no belt course, and does not infringe any claim which is qualified by having the belt course enumerated as one of its elements.

The "downward extension" is for the purpose indicated in the patent: "A deep beam is formed for supporting the floor load," as well as fulfilling the functions of window head and curtain wall. If it were only to fulfill these last-named functions, it might be quite shallow in cases where the windows were made so high as to come close to the floor above them; but to contribute substantially to the support of the floor load it must be the deep beam which the patent describes. The patentee evidently contemplated its having a depth greater than ordinary; the strength of a beam is proportioned to its depth. He shows a deep beam formed by his integral downward extension, he calls for a deep beam, he says one of its functions is to support the floor load, he says that when there is a similar integral upward extension between piers "the depth of the beam is further increased—and thus its

tensional and compressive strains are greatly lessened." In the opinion of a majority of the court, the defendant has not any such deep beam. It has only the usual shallow beam between piers, which was to be found in the art before the Ransome patent, which contributes to sustain the floor load merely to the extent that such beams have theretofore contributed, and not to the greater extent which the patentee seems to accomplish by the use of a beam with a distinctively deep web.

As to the "upward extension" it seems to a majority of the court essential to the patentee's structure that such extension should be integral with the floor, united with it, not by a mere joint which may be wind and water tight, but so rigidly that each part, floor and extension, will reinforce the other in resisting strains and stresses. The testimony is conflicting, but does not satisfy the majority that the mere superposition of a concrete block or wall on a floor of concrete, already set and hardened, without the aid of some equivalent to the coil joint of the patent, to bind the upper extension to the floor as rigidly as the lower one is bound, will effect the close union, the "integral structure," which the patent calls for. Defendant's structure shows merely the "part of the wall between piers" of the earlier art, not the integral upward extension of claims 7, 8, 9, and 10.

In the opinion of the majority the decree should be reversed, with costs of this appeal, and the cause remanded, with instructions to dismiss the bill.

COXE, Circuit Judge (dissenting). I am unable to agree with the majority of the court in reversing the decree as to all of the claims in issue. As I understand the invention, it consists in constructing a concrete building so that the vertical piers and the horizontal floors are practically molded together to form a strong, compact and homogeneous whole. The uprights and the floors are so firmly united that each supports the other, thus adding strength and durability to the building. The spaces between the piers above and below the floors are filled by upward and downward extensions which give additional strength and symmetry to the building. This construction produced a decided improvement in concrete buildings far beyond the capacity of the skilled mechanic. The defendant's best reference is the Bon Marché stable exhibit, but the most favorable view that can be taken of that structure is that it leaves the question of anticipation in doubt and is therefore insufficient to defeat the patent. The patent, marking as it does, a distinct forward movement in the art, is entitled to a liberal construction and a fair range of equivalents. I agree with the majority in thinking that the claims which have the "belt course" as an element are not infringed. The belt course is an ornamental cornice or band extending beyond the face of the building and the photographs of the defendant's structure do not show a horizontal course extending around the building as shown in Figure 3. Claims 7 and 9 do not, however, have the belt course as an element. They are as follows:

"7. A reinforced concrete floor extending to the exterior face of a building with an upward window sill extension, substantially as described."

"9. A reinforced concrete floor extending to the face of a building with downward and upward extensions, substantially as described."

The elements of claim 7 are:

First, a reinforced concrete floor extending to the exterior face of the building.

Second, an upward window sill extension.

Claim nine has the foregoing elements with a downward extension added.

That these claims are infringed I have no doubt.

An examination of the photographs of the defendant's structure clearly shows an upward extension which brings it within claim seven.

They also show the downward extension or a clear equivalent therefor. The photographs together with the testimony as to the manner in which these extensions are constructed and the function performed by them make it clear to my mind that the decree, so far at least as these claims are concerned, should be affirmed.